UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIANA M. LY,

    Plaintiff,

v.                                                      Case No:   6:18-cv-1274-Orl-40TBS

2300 CHERA INVESTORS, LLC and A T
WONUS PROPERTY MANAGEMENT
GROUP, LLC,

    Defendants.

## ORDER

This case comes before the Court on Defendants' Motion to Compel Responses to Requests for Production of Documents (Doc. 24). Plaintiff has filed a response in opposition to the motion (Doc. 25).

Plaintiff Diana M. Ly and her boyfriend leased a residence from Defendant 2300 Chera Investors, LLC, for one year commencing July 10, 2018 (Doc. 1, ¶¶ 5-7). Defendant A T Wonus Property Management Group, LLC manages the property (Id., ¶¶ 1, 5). On July 3, 2018, Plaintiff notified Wonus that she has an emotional support animal ("ESA") and provided a U.S. Service Animals registration number (Id., ¶ 8). Plaintiff also offered to provide a formal doctor's note to confirm her need for her ESA (Id.). Wonus replied that it was unable to confirm the ESA registration and asked Plaintiff to provide confirmation (Id., ¶ 9). After Plaintiff once again directed Wonus to the U.S. Service Animals website it asked her to sign a "Limited Medical Release" allowing Wonus to contact her healthcare provider (Id., ¶¶ 10-11). Wonus said it would determine whether to grant Plaintiff's request for reasonable accommodation once it received the completed

release and a medical certification (Id., ¶ 11). Plaintiff told Wonus she did not feel comfortable disclosing any additional information about her disability and medical records and instead provided a note from her psychiatrist, which she felt sufficed (Id., ¶ 13). The letter states:

> This is to verify that Diana Ly is under my treatment for a DSM IV diagnosis. I recommend that she be allowed to have her dog with her for emotional support at all times. She is taking medication and is to follow up in my office for medication management.
>
> If you have any questions, please do not hesitate to contact me[.]

(Id., ¶ 12; Doc. 1-2 at 2). Wonus responded that additional information such as further verification from her psychiatrist and a statement from previous healthcare providers was needed to evaluate Plaintiff's request for accommodation (Doc. 1, ¶ 14). Then, Defendants' representatives allegedly contacted Plaintiff's psychiatrist without her permission and demanded a copy of her medical records (Id., ¶ 17). Plaintiff claims that her continued refusal to divulge her personal medical information was met with a call from Defendants' lawyer. He allegedly berated Plaintiff, told her she was "stupid," and insisted that ESAs "are not a real thing." (Id., ¶ 20). In response, Plaintiff asked her psychiatrist to provide another letter on her behalf, which he did:

> This to verify that Diana Ly is under my treatment for a DSM IV diagnosis. I recommend that she be allowed to have her dog with her for emotional support at all times. This is necessary for her health because having her dog helps to calm her anxiety. She is taking medication and is following up in my office for medication management.
>
> If you have any questions, please do not hesitate to contact me

(Id., ¶ 23; Doc. 1-4 at 2). Plaintiff also gave the lawyer a note from another doctor, but Defendants were not satisfied (Doc. 1, ¶¶ 25-26; Doc. 1-5 at 2). They said Plaintiff was

not cooperating, and that the registration of Plaintiff's ESA "was from an illegitimate web site and not real." (Id., ¶ 25).

Plaintiff's complaint alleges that Defendants have failed to provide her a reasonable accommodation and retaliated against her in violation of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601, *et seq.* (Doc. 1). The instant dispute concerns Plaintiff's objections to two of Defendants' requests for production (Doc. 24).

A party may request another party "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" documents, electronically stored information, or other "tangible things" that are "in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1). Requests "(A) must describe with reasonable particularity each item or category of items to be inspected; (B) must specify a reasonable time, place, and manner for the inspection ...; and (C) may specify the form or forms in which the electronically stored information is to be produced." FED. R. CIV. P. 34(b)(1). For each request, the responding party "must either state that inspection ... will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "[A]n evasive or incomplete disclosure, answer, or response" to a discovery request is "treated as a failure to disclose, answer, or respond." FED. R. CIV. P. 37(a)(4). When a party "fails to produce documents or fails to respond that inspection will be permitted–or fails to permit inspection–as requested under Rule 34," the requesting party can move for an order to compel the discovery. FED. R. CIV. P. 37(a)(3)(B)(iv).

Request No. 4 asks Plaintiff to produce copies of her 2016 and 2017 federal income tax returns (Doc. 24 at 5; Doc. 24-2 at 2). Plaintiff objected to this request on the

- 3 -

grounds that her tax returns "are not relevant to any issue in suit, and information concerning Plaintiff's damages is available from other sources." (Id.). Plaintiff's relevancy objection borders on being overruled as pure boilerplate. And, absent further explanation not included in Plaintiff's response, her assertion that the information is available from other sources is not a valid objection. In her memorandum in opposition to the motion to compel Plaintiff argues that her tax returns are confidential, but she waived this objection by not including it in her response to the request. Bailey v. City of Daytona Beach Shores, 286 F.R.D. 625, 627 (M.D. Fla. 2012).

Defendants argue that Plaintiff should be required to produce her tax returns because they "will establish the extent to which Plaintiff has sustained a loss of income, if any, following the acts complained of in her Complaint." (Doc. 24, ¶ 5). But Plaintiff is not seeking lost income. Defendants asked her to itemize her damages and she responded as follows:

### Interrogatory No. 17

Itemize all damages that are sought by or on behalf of Plaintiff by type of damage and dollar amount and describe the method used to calculate each amount, including for each itemization a detailed description of the type or nature of each damage claimed to have suffered, the value or amount of money associated with each claimed damage, the factual basis for each damage, and the identity of all persons having knowledge of facts supporting each damage. Attach copies of any documents evidencing the damages identified in your Answers to these Interrogatories.

### Response

Plaintiff is entitled to damages for the increased costs of her prescriptions as well as medical visits prompted by the emotional upset and psychiatric harm she has sustained as a result of Defendants' actions. Plaintiff's prescription costs increased as a result of the issues with Defendants a total of $300.00. Plaintiff had increased office visits for the same

> reasons for a total additional cost of $120.00. Documentation concerning these claims of increased costs will be provided after an acceptable confidentiality agreement is entered into between the parties.
>
> Plaintiff is also entitled to compensatory damages for emotional and psychiatric pain and suffering, increased anxiety, stress, and difficulty sleeping caused by Defendants' callous and outrageous actions. Plaintiff seeks a total of $200,000 for those damages. In addition, Plaintiff seeks $1,000,000 in punitive damages.

(Doc. 25-1 at 7-8). Therefore, the requested information is not relevant and Defendants' motion to compel Request No. 4 is **DENIED**.

Defendants' fifth request for production asks Plaintiff to produce her bank statements, credit card statements and other financial statements for 2018 (Doc. 24 at 5). Plaintiff objected to this request on the ground "that information sought is not relevant to issues in suit and serves no purpose other than to harass and annoy" her (Id., at 6). These objections are as insufficient as Plaintiff's objections to Defendants' fourth request.

Defendants argue that Plaintiff should be required to produce her financial information because "[f]unds expended by Plaintiff to secure medical treatment including payments to internet companies to secure letters in support of her need for an emotional support animal without any prior treatment or evaluations are particularly relevant to this action, including the credibility of Plaintiff's statements regarding the extent of her emotional disorder and her need for an emotional support animal." (Doc. 24 at 8). Defendants' assertion that Plaintiff bought on the internet the letters and certificates upon which she relies has not, to the Court's knowledge, been established. If Defendants want Plaintiff's records to show if she purchased these documents and if so, from where, they should ask for the specific records. Defendants have not shown why they need or are entitled to all of Plaintiff's 2018 financial information to discover whether there is a factual

basis for their claim. Therefore, the request is overbroad and Defendant's motion to compel Request No. 5 is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on January 23, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record