UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DIANA M. LY,

    Plaintiff,

v.                                      Case No:   6:18-cv-1274-Orl-40TBS

2300 CHERA INVESTORS, LLC and A T
WONUS PROPERTY MANAGEMENT
GROUP, LLC,

    Defendants.

## ORDER

This Fair Housing Act case comes before the Court without a hearing on Plaintiff's Renewed Motion to Disqualify Counsel (Doc. 45). Defendants have filed a response in opposition to the motion (Doc. 46), and Plaintiff has filed a reply (Doc. 47).

### Background

In 2018, Plaintiff Diana M. Ly and her boyfriend rented a place to live from Defendant 2300 Chera Investors, LLC (Doc. 32-2, ¶ 3). The property is managed by Defendant A T Wonus Property Management Group (Id.). After renting the premises, Plaintiff informed the property manager that she had an emotional support animal ("ESA") and would provide a doctor's note to confirm her need for the ESA (Id., ¶ 4). Defendants were not satisfied with the information provided by Plaintiff and asked her to sign a Limited Medical Release and Medical Certification (Id., ¶ 7). Rather than sign Defendants' form, Plaintiff had her psychiatrist, Dr. Sonny Joseph send a note stating that Plaintiff was under his treatment and he recommended she be allowed to have her ESA "for emotional support at all times." (Id., ¶¶ 8-9). This did not satisfy Defendants who wanted the signed

Limited Medical Release or a more detailed letter from Dr. Joseph evidencing Plaintiff's need for an ESA (Id., ¶ 11). Then Dr. Joseph's office told Plaintiff someone representing Defendants had called and demanded copies of her medical file (Id., ¶ 13). This caused Plaintiff to write to the property manager, expressing her reluctance to reveal the details of her disability (Id., ¶ 15). Here is what Plaintiff says happened next:

> 16. Later in the afternoon of July 10, 2018, subsequent to the email exchanges between me and Mr. Matamoros identified above, I received a telephone call from Attorney Jay L. Swistak, who identified himself as the attorney for Atrium, who I believed to the "Jay" previously identified to me by Mr. Matamoros. During the call, Attorney Swistak berated me, told me I was "stupid"; that "ESA's are not a real thing"; that I was going to get sued and evicted; insisting that I simply sign the "Limited Medical Release Form", and that he could not understand why I did not sign, and that my failure to so was a "red flag"; inaccurately insisting that I had no proof that I was even suffering from a disability prior to July 9, 2018, suggesting that I had made it up to obtain my ESA; that a plaintiff can see a psychiatrist for any reason; reiterating that I was "stupid" and that "ESAs are a bunch of BS" that have raised serious issues in other states familiar to Attorney Swistak. When I expressed my outrage that he would speak to me in this manner, that he was not to call me again, and that I wanted to speak with an attorney, Attorney Swistak told me that "you probably don't have one"; and "you probably cannot afford one."
>
> 17. Later that same afternoon, I received an email from Attorney Swistak acknowledging the telephone conversation of earlier that day, insisting that my Support Animal Registration for my ESA was "not legitimate documentation or credible evidence of your disability and need for a support animal"; arguing that "landlords are permitted to make reasonable inquiry to establish the disability and need for a service/support animal; and that he was only seeking to "conduct a very limited inquiry to verify information you allege."

(Id., ¶¶ 16-17). Plaintiff contends that Swistak's actions evidence "a campaign of illegal and unreasonable harassment and retaliation against Plaintiff, including unlawful and

unreasonable rejection of her ESA certifications largely fueled upon a belief, as expressed by Attorney Swistak, that ESAs are 'BS'" (Doc. 1, ¶ 38).

Swistak has filed his own affidavit stating:

> 1. I have been a member of the Florida Bar since 2007.
>
> 2. I have defended multiple clients against claims of violations of The Fair Housing Act and I am very familiar with fair housing law.
>
> 3. I am the attorney of record for 2300 Chera Investors LLC and AT Wonus Property Management Group LLC, defendants in this action.
>
> 4. I am familiar with the facts related to Plaintiffs request for a reasonable accommodation in the pending matter.
>
> 5. I have had communications with both Plaintiff and Defendants regarding Plaintiff's request for a reasonable accommodation.
>
> 6. The July 10, 2018 telephone call that I had with Plaintiff was amicable. During the conversation, I explained to her the landlord's need and right to a meaningful review of her request for a reasonable accommodation.
>
> 7. Plaintiff declined to discuss her request for an accommodation over the telephone and requested all communications be via email.
>
> 8. Plaintiffs assertion that I berated her is not true. Her allegation that I stated she was "stupid," that emotional support animals are "BS," that "ESAs are not a real thing," and that "she could not afford an attorney" are untrue.
>
> 9. My emails to Plaintiff repeatedly requested that she have her attorney contact me to discuss her accommodation request and Defendants' need to conduct a meaningful review of her request.
>
> 10. I did inform Plaintiff that the emotional support animal registration and certificate she purchased via the internet were insufficient information to grant her request for a reasonable accommodation.

> 11. I did contact Dr. Sonny Joseph's office as he requested I do in letters dated July 9, 2019 and July 12, 2018; however, I never spoke with Dr. Joseph.
>
> 12. I did not request any of Plaintiffs medical records.
>
> 13. The emails attached to Defendants' Motion for Summary Judgment between Plaintiff and myself are true and accurate copies of the emails I exchanged with Plaintiff.
>
> 14. In the event I testify in this matter, my testimony will be limited to my communications with Plaintiff and the telephone call I had with an employee of Dr. Joseph.
>
> 15. Any testimony I provide, will be supportive of Defendants' defenses in this action.

(Doc. 43).

Plaintiff is asking the Court to disqualify Swistak on the ground that he will be a witness in this case (Doc. 45, ¶ 7). Defendants argue that Swistak should not be disqualified because he is at most, a rebuttal witness to conversations they contend "are completely irrelevant to whether Defendants knew or should have known of Plaintiff's alleged disability or whether Plaintiff has established, or will be able to establish at trial, a prima facie case of discrimination." (Doc. 46 at 2).

### Legal Standard

There are two sources of a court's authority to consider a motion to disqualify an attorney. First, attorneys are bound by the rules of the court in which they appear. Second, their professional conduct is governed by federal common law, "because motions to disqualify are substantive motions affecting the rights of the parties." Herrmann v. GutterGuard, Inc., 199 F. App'x. 745, 752 (11th Cir. 2006).

Motions to disqualify opposing counsel are "'generally viewed with skepticism because ... [they] are often interposed for tactical purposes.'" Yang Enter., Inc. v.

Georgalis, 988 So. 2d 1180, 1183 (Fla. 1st DCA 2008) (quoting Alexander v. Tandem Staffing Solutions, Inc., 881 So. 2d 607, 608-09 (Fla. 4th DCA 2004)). The burden of proof is on the party bringing the motion for disqualification. Id.

"'Because a party is presumptively entitled to the counsel of his choice, that right may be overridden only if 'compelling reasons' exist.'" Herrmann,199 F. App'x at 752 (quoting In re: BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003)). "Disqualification of a party's chosen attorney is an extraordinary remedy that should be resorted to only sparingly ..." Steinberg v. Winn-Dixie Stores Inc., 121 So. 3d 622, 624 (Fla. 4th DCA 2013) (quoting Arcara v. Philip M. Warren, P.A., 574 So. 2d 325, 326 (Fla. 4th DCA 1991) (citing Gen. Accident Ins. Co. v. Borg-Warner Acceptance Corp., 483 So.2d 505 (Fla. 4th DCA 1986)).

"An order disqualifying counsel 'must be tested against standards imposed by [the] Rules of Professional Conduct.'" AlliedSignal Recovery Trust v. AlliedSignal, Inc., 934 So. 2d 675, 678 (Fla. 2d DCA 2006) (quoting Tobkin v. Tobkin, 843 So. 2d 961, 962 (Fla. 4th DCA 2003) (quoting City of Lauderdale Lakes v. Enter. Leasing Co., 654 So. 2d 645, 646 (Fla. 4th DCA 1995)). The Rules Regulating the Florida Bar provide:

> (a) **When Lawyer May Testify**. A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness on behalf of the client unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
>
> (3) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (4) disqualification of the lawyer would work substantial hardship on the client.

R. Regulating Fla. Bar. 4-3.7(a) (2018). "[T]he rule requiring a lawyer to withdraw when he expects to be a witness in the case 'was not designed to permit a lawyer to call opposing counsel as a witness and thereby disqualify him as counsel.'" Arcara, 574 So. 2d at 326 (quoting Cazares v. Church of Scientology of Calif., Inc., 429 So. 2d 348, 350 (Fla. 5th DCA), *review denied*, 438 So. 2d 831 (Fla. 1983)). But it is possible for a conflict requiring disqualification to arise if a party calls the opponent's lawyer as a witness and the lawyer's testimony is adverse to the client's position. Steinberg, 121 So.3d at 625; Allstate Ins. Co. v. English, 588 So. 2d 294, 295 (Fla. 2d DCA 1991).

The party moving for disqualification of opposing counsel has the burden of showing "the necessity of the attorney's testimony and thus his disqualification." Quality Air Conditioning Co., Inc. v. Vrastil, 895 So. 2d 1236, 1237 (Fla. 4th DCA 2005) (quoting Hiatt v. Estate of Hiatt, 837 So. 2d 1132, 1133 (Fla. 4th DCA 2003)). "A lawyer is not a necessary witness when there are other witnesses available to testify to the same information." Steinberg, 121 So. 3d at 624. "A motion to disqualify should be made with reasonable promptness after the party discovers the facts which lead to the motion." Transmark, USA, Inc. v. Sate of Fla. Dept. of Ins., 631 So. 2d 1112, 1116 (Fla. 1st DCA 1994). "The rationale behind this rule is to prevent a litigant from using the motion as a tool to deprive his opponent of counsel of his choice after completing substantial preparation of the case." Id.

### Discussion

The Fair Housing Act makes it unlawful to engage in certain discriminatory practices in connection with the sale or rental of a dwelling. 42 U.S.C. § 3604. For purposes of the Act, discrimination includes denying a disabled person a reasonable accommodation that is necessary to ensure an equal opportunity for that person to use

and enjoy her dwelling. 42 U.S.C. § 3604(f)(3)(B). A person is handicapped for purposes of the Fair Housing Act, if she has (a) "a physical or mental impairment which substantially limits one or more of such person's major life activities," (b) "a record of such impairment," or (c) is "regarded as having such an impairment." 42 U.S.C. § 3602(h); <u>Hawn v. Shoreline Towers Phase 1 Condominium Ass'n, Inc.</u>, 347 FED. APPX. 464, 467 (11th Cir. 2009). To prevail on her Fair Housing Act claim Plaintiff must prove by a preponderance of the evidence that: (1) she is disabled within the meaning of the Fair Housing Act; (2) she requested an accommodation; (3) the accommodation was necessary to afford her an opportunity to use and enjoy her dwelling; (4) her request was reasonable; and (5) Defendants refused to make the requested accommodation. <u>Bhogaita v. Altamonte Heights Condominium Assn., Inc.</u>, 6:11-cv-1637-Orl-31DAB (Doc. 130 at 7) affirmed 765 F.3d 1277 (11th Cir. 2014).

The Court denied Plaintiff's first motion to disqualify Swistak largely because Defendants affirmatively stated that they did not intend to call him as a witness (Doc. 18 at 5). Plaintiff also failed to show that if she called Swistak, any testimony he might give would conflict with Defendants' position since it appeared his only possible usefulness would be to authenticate the emails he exchanged with Plaintiff (<u>Id.</u>). The situation has now changed. Plaintiff has filed a motion for partial summary judgment which is supported by Dr. Joseph's affidavit and Plaintiff's affidavit recounting their versions of phone calls made by Swistak (Docs. 32, 32-1, 32-2). Plaintiff also relies on these affidavits to oppose Defendants' motion for summary judgment (Doc. 35, ¶ 1).

Defendants filed Swistak's affidavit to counter Dr. Joseph and Plaintiff's affidavit testimony (Doc. 43). Still, Defendants argue that Swistak should not be disqualified because he is not a necessary witness; they do not intend to call him as a witness in

support of their defenses to Plaintiff's claims; and his testimony will not be prejudicial to Defendants (Doc. 46 at 4-8). If these assertions were true, then there was no need to file Swistak's affidavit in connection with the pending summary judgment motions. In fact, Swistak's testimony is necessary because the statements Plaintiff claims he made to her are direct evidence of discrimination. See United States v. City of Taylor, Michigan, Nos. 91-CV-73218-DT, 91-CV-72280-DT, 872 F. Supp. 423, 429 (E.D. Mich. 1995) ("paternalistic and other discriminatory statements made by Taylor officials about … elderly disabled residents" were evidence of discrimination against the handicapped); Aloqaili v. National Housing Corp., No. 3:89CV7090, 743 F. Supp. 1264, 1269 (N.D. Ohio 1990) (conversations between plaintiff and property manager were direct evidence of discrimination); United States v. L & H Land Corp., No. 75-742-CIV-WM, 407 F. Supp. 576, 579 (S.D. Fla. 1976) ("statements to the effect that black persons were not permitted at San Sherri Villas and could not be entertained as guests constitute an admission … of a policy in violation of" 42 U.S.C. §§ 3604(a) and (b)). Swistak is the only witness who can provide his version of the telephone calls he made to Dr. Joseph's office and to Plaintiff. Consequently, Swistak is a necessary witness to disputed facts and Defendants will need his testimony at trial. He is therefore, disqualified from representing Defendants in the trial of this controversy.

**DONE** and **ORDERED** in Orlando, Florida on July 2, 2019.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record